## SALTMARSH, ET AL VS. ROWE & VANDEVENTER.

Where several persons engage in the building of a steamboat, all the owners are liable for materials furnished for its construction, although purchased by one, there being no evidence to shew that there was any agreement to give the credit alone to that one, even though there may have been an agreement between the owners that each should build a particular part of the boat.

APPEAL from the St. Louis Court of Common Pleas.

Todd & Bates *for the Appellants.*

I. The Court erred in refusing to give to the jury the *following instructions* asked for by defendants:

1. The instruction that "unless the jury find from the testimony that Benjamin T. Osborne was

the agent of the other defendants named in the declaration, (except the Hites,) with authority from them to contract with the plaintiffs for the lumber, the value of which is now sued for, they will find for the defendants," ought to have been given, because, unless their authorized agent therefor, his contracts could bind only himself. For their general relations with each other with regard to the boat were, at the most, those only of tenants in common, and one tenant in common cannot *ex vi termini* bind his co-tenants as to third persons by any contracts of his, touching the property held in common, nor to himself without their express prior assent, except perhaps in cases of necessity, and then only on express prior request and refusal, unless before made general agent therefor. 3 Kent's Com. p. 151 to 157. That they are tenents in common. 6 Cowen Rep. p. 475. That the contracts of each don't bind the rest. 8 Mo. Rep. 358-360. Gow on Partnership p. 64-5. 3 Kent's Com. p, 63. That partners after dissolution are tenents in common, and their acts and declarations cannot bind their co-tenants except in matters happening during their partnership. 3 J. R. p. 175; 8 Mo. Rep. 358. That tenants in common are unlike partners. Gow on Partnership, p. 194 n. x; 20 J. R. 611.

2. The instruction that "unless the jury find from the testimony that Benjamin T. Osborne at the time of making the note, which is in evidence, was clerk of the steamboat Potosi, they ought not to find for the plaintiffs as to that note," ought to have been given, because unless such clerk, it is the note of Osborne alone. Bank of Missouri vs. Scott, 1 Mo. Rep., p. 533, of new publication p. 744 margin.

The Court also by letting in this note, and refusing said instruction, in effect told the jury that if they believed that Osborne was part owner, he could bind his co-owners by any kind of contract in behalf of the boat and by notes—that he was their agent because part owner.

3. The instruction, "in this action the jury ought not to find against any one of the defendants unless they think such defendant was an owner of the steamboat Potosi, and authorized the purchase of the lumber," ought to have been given, because if an owner, but not authorising, his position and liabilities are those only of a tenant in common, and therefore not liable.

4. The instruction, "if the jury believe from the evidence that a contract was made between Osborne and the others of the steamboat Tide, when she was broken up and the building of the Potosi begun, that Osborne was to build at his own expense the cabin, and that the expense thereof was to be allowed him towards his contributory share in the building of the Potosi, and that said Osborne did build the cabin in pursuance of such contract, and that the said plaintiffs dealt with Osborne only in selling the lumber, giving credit, demanding and receiving payment until the maturity and protest of the note given by Osborne, they will find for all the defendants except Osborne," ought to have been given, because if Osborne bought this lumber for a purpose solely his, and the plaintiffs dealt with him alone, Osborne alone is liable for the lumber. 11 Mass. R. p. 35.

II. The Court erred in giving the two following instructions, to-wit:

1. "If the jury believe from the evidence that one or more of the defendants were part owners of the steamboat Potosi, at the time plaintiff's account accrued, and that the lumber therein charged, was used in the building of the said steamboat, the said part owners are liable to the plaintiffs for the same." Because one tenant in common is not liable for the contracts of his co-tenant touching their common property by the law of their relation.

2. "The jury will state in their verdict for which of the defendants they find, and against whom, with the amount—also, any arrangements between the defendants as to what part of the boat any one should construct, does not affect the plaintiff's right to recover against all who are part owners, unless it be that the plaintiffs knew of these arrangements." Because under such an arrangement each one's work is exclusively his until the completion of the boat, and then those holding it together, hold it as tenants in common.

III. The evidence shows that the plaintiff below gave the entire credit to Osborne, and looked to no further security except their lien upon the boat. 11 Mass. Rep. p. 34.

IV. The Court erred in refusing to grant the motion for a new trial. Because the verdict is against evidence in this, that it does not prove a contract to which the appellants are parties at law —for the contract proved was between appellees and Osborne only; appellees sold to Osborne alone, and Osborne alone bought the lumber. The appellants are certainly not proved to be express parties to the purchase, neither can they be bound on an implied contract because the lumber was put in a boat which, when completed, was property in common between Osborne and them. Because till the lumber was put into the boat the appellants had no claim in the lumber, it was Osborne's, and he could do with it as he choose; but when put into the boat it lost its character as lumber, and became parcel of the boat, and also its individual character of the sole property of Osborne; and becoming merged in the boat, obtained the character of property in common between appellants and Osborne.

### POLK *for the Appellees.*

The counsel of the appellees maintains that the instructions given by the Court, are the law of of this case. To the second instruction given by the Court, it is taken for granted that no objection can be reasonably raised.

That the first instruction was properly given by the Court, reference is made to the following authorities: Abbott on Shipping, 71-2; Westerdell vs. Dale, 7 T. R. 306; Rich, Ex'r. vs. Coe, et al, Cowper 636; 7 Johns. R. 311; 16 do. 89; 1 Dallas 129.

In this case the purchase was made by Osborne, who acted as clerk, and who was one of the owners, and the amount was charged against the boat and owners. It therefore fully meets the case given Johnson's Reports, and is much stronger than the case in Term Reports, where the owner, who was sued, not only did not authorize the purchase, but was not even charged with the goods.

That the third instruction given by the Court is correct, see Rich, Ex'r. vs. Coe, et al, Cowper 636.

The counsel of appellees also contends that the Court below committed no error in refusing the four instructions prayed by appellant's counsel in the court below. 7 Mo. R. 416; 1 do. 505, and 1 do. 68 or 97; 3 do. 411; 6 do. 6; 3 do. 382 and 359; 7 do. 128 and 430; 8 do. 339.

### SCOTT, J., *delivered the opinion of the Court.*

This was an action of assumpsit, instituted by the appellees, Rowe and Vandeventer, against the appellants, Edward and Charles H. Saltmarsh, Benj. T. Osborne, Nicholas Wall, and George and Wm. Hite, alleged owners of the steamboat Potosi. The declaration contained a count on a promissory note, charged to have been executed by the defendants, *per pro curationem,* and also the common counts. The defendants below, prayed a bill of particulars of the plaintiff's demand under the common counts, and the plaintiff filed as such bill of particulars an account for lumber furnished, which was the consideration of the note sued on. On the plea of non-assumpsit the parties went to trial, and the issue was found for the plaintiffs, and their damages assessed to the amount of $366 02, which was the amount of the bill for the lumber furnished and

interest.  Before the trial the plaintiffs entered a *nolle prosequi* as to two of the defendants, George and William Hite, and judgment by default having been taken against Osborne, the issue was found against the other defendants, and damages assessed as aforesaid.

The following is the substance of the testimony in the cause:

Thomas H. Hatch being sworn, testified that he knew the plaintiffs and their co-partnership, which was formed in February, 1842, and they composed the firm of Rowe & Vandeventer; that he had been their clerk; that plaintiffs traded in lumber; that witness sold and delivered for them; that he knows the handwriting of Benjamin T. Osborne; that the signature of said Osborne to the note shown to him at the close of the plaintiff's case, given in evidence, which was of the following tenor, to-wit: "Dolls 327 42-100.   St. Louis, July 27, 1842.   Ninety days after date, steamboat Potosi and owners promise to pay to the order of Rowe & Vandeventer, three hundred and twenty-seven 42-100 dollars, for value received, negotiable and payable without defalcation or discount. B. T. OSBORNE, Clk."—[Protested for non payment October 28th, 1842. ANDREW ELLIOTT, N. P.]—was the handwriting of said Osborne; witness had seen said Osborne on board said boat as clerk; that he did not know that said Osborne was clerk of the steamboat Potosi only as he understood; he had seen him on said Potosi, but did not know of his acting as clerk except in buying the lumber suit for in this suit; that said note was given for the lumber as set forth in the bill of particulars filed in this case for the said Potosi; that the body of said note was written by said Rowe; the lumber was bought by said Osborne; witness sold and delivered it all excepting a few items, amounting to $8 93; this, said Rowe sold; the lumber was used in making the cabin of said Potosi, which was built at Captain Case's yard; that the signature of said Osborne to the affidavit to the bill of said lumber, first made out and shown to the witness, is Osborne's, which bill and affidavit were in the words and figures following, to-wit: (this bill contains the same items as that filed in the bill of particulars in the case, and at the foot of it is an affidavit of Osborne's, in the following words:)

*State of Illinois,*    }
   County of Adams,    } ss.

I, Benjamin T. Osborne, being duly sworn, depose and say that the within account of Rowe & Vandeventer against the steamboat Potosi is a true, just and correct account, and that the balance of three hundred and twenty-seven 42-100 dollars, as appears by said bill, is justly

due and owing from said steamboat Potosi to said Rowe and Van Deven-ter, so help me God.                    B. T. OSBORNE.

Subscribed and sworn to this 12th day of November, A. D. 1842, before me, EBEN MOORE, J. P., Adams co., Ills.

Osborne engaged the lumber and paid the money credited on the bill of particulars; don't know who were the owners of the said Potosi only from said Osborne; Osborne said he was part owner; the prices set forth in said bill of lumber were the market prices both for that he sold and delivered, and that said Rowe did. On cross examination he testified, that all he knows of the said lumber sold by said Rowe is, that said Rowe told him, and the original charge is in the handwriting of Rowe, who was in the habit of selling and delivering lumber himself; the lumber was taken to said Potosi where she lay for completion, which was at the river at St. Louis, opposite the lumber yard of the plaintiffs; he demanded pay for the lumber of Osborne only; he never demanded pay for the note; Osborne himself called for the plaintiff's bill for the lumber sold as aforesaid.

Henry M. Snyder, sworn on the part of plaintiffs, testified that he knows the steamboat Potosi; it was built at the yard of Captain Case; he did some castings and other work, as a founder, for her engine; he is a founder; at the time he was doing the work in April, 1842, Charles H. Saltmarsh told him he was one of the owners, and his brother Edward also; Edward, in July, 1842, told witness that he was one of the owners; he then presented his account for payment to Charles, and Charles said he would show it to his brother Edward, who looked at it, said it was right, and directed him to go to the office for his pay; he don't know, only by sight, who was clerk; he had seen the same person frequently on the boat; before then he had a conversation with Edward on the boat, while the cabin was building, in which he told witness he was one owner; he believes there were other owners, but he don't know who they were; the cabin was being built, he thinks, in June, the boat lying just below the dry dock; at the last conversation he thinks the cabin was up; don't recollect when she begun running, but it was some time in July or August, as near as he can recollect. On cross examination he testified that the boat had been running when he presented his bill; the above conversation in April took place with said Charles, when they, that is Charles and others, were removing a portion of the steamboat Tide to the Potosi; the engine was put into the Potosi; the object of the conversation was to ascertain who would pay him for his work; Charles Saltmarsh said that he and his brother were the owners and would pay him.

Calvin Case, sworn in behalf of the plaintiffs, testified that he was the owner of the boat-yard where the Potosi was built; he built the hull of the Potosi under a contract with Edward Saltmarsh; Edward was frequently present; he did not build the cabin; he saw Osborne superintending the building of the cabin, and he seemed to take the management of this part of the work; he saw him frequently about the boat in company with the Saltmarshs; in January, 1842, he made his contract for the hull with Edward, and completed it in March or April; he heard Osborne and the Saltmarshs conversing together during the progress of the work, but don't recollect the purport of the conversations, but they had reference to the manner of doing the work; knows Nicholas Wall, and thinks after the boat began to run, he said he was part owner; did know him before; had not seen him about the building of the boat; knows George and William Hite, and thinks he has seen the Hites about the boat while building, but they said nothing about having any interest in the boat.   On cross examination testified, that his boat-yard was the first establishment in St. Louis, and that it was customary for persons engaged in steamboating to come to the yard and advise, suggest and talk about how boats should be built; Edward paid him for building the hull, except $150, which Charles H. Saltmarsh, during the building of the hull, paid him, saying that he had lent it to Edward for that purpose; the Potosi began to run in July; he don't know who was clerk at starting, but Mr. Wall was shortly after; he sent some chimneys, and as there was some difference about the price, they left it out to others, and Osborne attended to it; the Saltmarshs have been engaged for some considerable time in steamboating on the river; Charles H. was engaged on the Rosalie, till the hull of the Potosi was launched, and then he left her and went to putting the engine on board the Potosi; he seemed to be engaged in the building as much as the others, but they said Edward was the only owner; Charles H. and Edward are brothers, and the conversations at the boat-yard, while the hull was building, was about the manner of building it, but he understood that Edward was the only owner; Edward paid him, he thinks, about $2800 for building the hull.   Re-examined in chief, he can't say who was clerk of the boat of the boat before it run; he can't say whether it was just before or after the boat began to run that he delivered the chimneys, they were bargained for before; he talked with Edward and Charles H. about them; he contracted with no one for them but the Saltmarshs; at first Edward objected to the price, and Charles H. afterwards met him upon the sidewalk and said they would leave *out* to others; he can't say whether Charles H. talked for himself

or Edward, as agent.—(The plaintiffs here entered a *nol pros.* as to the Hites.)

In behalf of the defence, Mr. O'Flagherty being sworn, testified that he has known the Potosi from the first, that Mr. Wall was the only clerk he ever knew upon her; he was also clerk of the Tide; he and his partner deal in boat stores upon the levee, and have sold the Potosi, before and since her building, boat stores. On cross examination, testified that he did not know Osborne; that he furnished spikes to the Saltmarshs, and charged them to the steamboat Potosi; he did understand that Charles H. was liable for the spikes; he was helping to put the engine in, and, after the Potosi began running, was engineer; Charles H. ordered the things, and so do all engineers in putting up works; he was surprised to see that Charles H. was on her as engineer.

Jesse Davidson, sworn in behalf of the defence, testified that he knew the steamboat Tide; Osborne bought out Mr. Waggoner's interest in the Tide, which was one-fourth; Charles H. Saltmarsh was not part owner of the Tide that he ever knew of; the owners of the Tide, when the building of the Potosi was began, and portions of the Tide were taken to be worked into the Potosi, were himself, Edward Saltmarsh, and said Osborne and Wall; Edward Saltmarsh, Nicholas Wall, Benj. T. Osborne and witness, were the owners of the Potosi; he sold his interest in the Potosi to Charles H. Saltmarsh, and made to him a bill of sale, which was in the words and figures following, to-wit: "Know all men by these presents, that I, Jesse Davidson, of the first part, do hereby convey, grant, bargain, sell and alien, unto Charles H. Saltmarsh, of the second part, all my right, title, and interest I had in the steamboat Tide, being one-fourth thereof, free from all incumbrances whatsoever, also my interest in all debts due and monies belonging to said steamboat Tide, which may be on hand, together with my right and interest in the new steamboat Potosi, which was built for, and has on it, the machinery of the above mentioned steamboat Tide. For and in consideration of five hundred and sixteen dollars and 66-100, the payments of which to be as follows: One hundred dollars on the 11th of August, 1842, and four hundred and sixteen dollars and 66-100, on the 28th of October, 1842. In testimony whereof, I have hereunto set my hand and seal this eleventh day of July, 1842. JESSE DAVIDSON, [seal.] Witness: B. T. OSBORNE."

On cross examination, testified that the sale of his interest to Charles H. was, as he believes, of the date the bill of sale bears; as much of the Tide was used in the Potosi as could be; Edward Saltmarsh, Nicholas

Wall, C. Waggoner, and himself, owned each one-fourth of the Tide; he did not know of the lumber being got by Osborne of the plaintiffs; he was sick while the Potosi was building.

Mr. J. Jones, sworn on the part of the defence, testified that he has known the Potosi from the commencement of her running; he became acquainted with her through Mr. Wall; he taught Mr. Wall 'book-keeping; Mr. Wall was the clerk of the Potosi at the commencement of her running; don't remember the time she began to run; he had access to the boat's books as an assistant of Mr. Wall in keeping them; he has never known of any other clerk of the Potosi.  On cross examination, testified that he never went on the boat only when she was in port; knows Mr. Osborne, but never knew him as clerk of the Potosi; he was on the boat from time to time when she was in, and helped to keep the books in order; knows that Osborne was on the boat, and thinks he acted as second clerk.

Henry Peers, sworn for the defence, testified that he knows the Potosi; that he was employed as joiner on her while building; his work was confined to the building of the cabin; Osborne hired him, paid and discharged him when the boat was finished; he never applied to any one else for pay; Osborne formerly resided at Quincy; Osborne told him that he had bought one-fourth of the Tide, and that they were going to build the Potosi; and that he was to build the cabin, and what that cost he was to be allowed so much in the Potosi; he was present at the building of the cabin, off and on, from its commencement, and Osborne was the only man who gave me directions and orders, and employed the hands working upon it, and no other person employed them; he worked as joiner for about six weeks of the latter part of the time the cabin was building; the cabin was finished about the 10th of June; the Potosi started her first trip on the 17th of July; N. Wall was the clerk; it was in July that he he heard that Charles H. Saltmarsh had bought out Davidson.  On cross examination, testified that both of the Saltmarshs were on and about the boat while it was building; neither of the plaintiffs was present when Osborne told him as aforesaid.

Hiram Miller, sworn for the defence, testified that he knows the steamboat Potosi; he helped to put up her engine; the cabin was built while he was working on the engine; the boilers were up and the engine on the boat when Charles H. Saltmarsh came to work on the boat; Osborne was building the cabin; knows that Osborne employed the hands for making the cabin; don't know if any other person employed hands on the cabin; Edward Saltmarsh hired him to work on the engine and

shafts; he is a mill-wright; Osborne paid the joiners who worked on the cabin; knows of no one else paying them; Osborne once went up to Quincy on business, and was not present on Saturday night when the pay of the hands upon the cabin was due, and the hands applied to Edward Saltmarsh, who refused to pay them, saying that he had nothing to do with them; Edward Saltmarsh paid him; Charles H. Saltmarsh was employed as engineer on the steamboat Rosalie till he came to work on the Potosi.    On cross examination, testified that he was present at the employment and payment of the joiners upon the cabin; Edward Saltmarsh, while the hull was building, was repairing the old engine of the Tide.

William Hite, sworn for the defence, testified that he knows the Potosi; he has known her from the time she was begun to be built; the Potosi started on her first trip July 17, 1842, he was on her as pilot; Nicholas Wall was clerk of the boat on her first trip, and continued so for two years; he don't recollect the exact date when Charles H. Saltmarsh bought Davidson's interest, but it was after she was finished; he, the witness, became part owner of the Potosi, July 18, 1842; he bought a one-sixteenth of Charles H. Saltmarsh, who on the same day sold one other sixteenth to Charles Chaplin; it was only three or four days before then that Charles H. bought of Davidson; he never heard of Charles H. Saltmarsh owning any thing of the Potosi before he bought of Davidson. On cross examination, testified that the way he knows of the time when Charles H. Saltmarsh bought of Davidson is, because he tried to buy of Davidson, but there was some difficulty, and so Charles H. bought, and then he bought of Charles H. Saltmarsh.

The defendants, after the close of the evidence, asked the following instructions, which the Court refused to give:

"Unless the jury find from the testimony that Benjamin T. Osborne was the agent of the other defendants named in the declaration, (except the Hites,) with authority from them to contract with the plaintiffs for the lumber, the value of which is now sued for, they will find for the defendants."

"Unless the jury find from the testimony that Benjamin T. Osborne, at the time of making the note, which is in evidence, was clerk of the steamboat Potosi, they ought not to find for the plaintiffs as to that note."

"In this action the jury ought not to find against any one of the defendants unless they think that such defendant was an owner of the steamboat Potosi, and authorized the purchase of the lumber."

"If the jury believe from the evidence that a contract was made be-

tween Osborne and the others of the steamboat Tide, when she was broken and the building of the Potosi begun—that Osborne was to build at his own expense the cabin, and that the expense thereof was to be allowed him towards his contributary share in the building of the Potosi, and that said Osborne did build the cabin in pursuance of such contract, and that the said plaintiffs dealt with Osborne only, in selling the lumber, giving credit, demanding and receiving payment until the maturity and protest of the note given by Osborne, they will find for all the defendants, except Osborne."

To this refusal the defendants excepted. The Court then gave the following instructions, viz:

"If the jury believe from the evidence that one or more of the defendants were part owners of the steamboat Potosi, at the time plaintiff's account accrued, and that the lumber therein charged was used in the building of the said steamboat, the said part owners are liable to the plaintiffs for the same.

"The jury will state in their verdict for which of the defendants they find, and against whom, with the amount, also any arrangements between the defendants as to what part of the boat any one should contract does not affect the plaintiff's right to recover against all who are part owners, unless it be that they, the plaintiffs, knew of these arrangements."

To the giving of which the defendants excepted. The Court then gave the following instruction at the instance of the defendants, viz:

"The jury ought to find for such and so many of the defendants as they shall believe from the evidence, were not part owners of the steamboat Potosi at the time of the furnishing of the lumber sued for in this case."

A motion for a new trial having been refused, the defendants appealed to this Court.

The evidence in the cause warranted the Court in giving the instruction to the jury, that if they believe from the testimony that one or more of the defendants were part owners of the steamboat Potosi, at the time the plaintiff's account accrued, and that the lumber therein charged was used in building the said boat, the said part owners are liable to the plaintiffs for the same. This instruction contained, as it seems to us, the law applicable to the case.

It is said a ship is usually conveyed by bill of sale, or some writing of that nature, to different persons, in several and distinct shares, and consequently the several part owners thereby become tenants in common with each other of their respective shares. Abbott 68. Part owners of a ship are tenants in common, and one cannot dispose of the inte̶r̶e̶s̶t̶ o̶f̶

another.    But with regard to the repairs of a ship, and other necessaries for the employment of it, one part owner may, by ordering these things on credit, render his companions liable to be sued for the price of them, unless their liability is expressly provided against.    Ibid 76.    This is the English law, and Judge Story says that our own law coincides with that of England in holding all the part owners liable for repairs and necessaries furnished the ship.    Not only the ship's husband, but all the owners, are liable therefor, notwithstanding they are ordered by him.    The cases of Schemerhorn vs. Loines, 7 John. 311, and Muldow vs. Whitlock, 1 Cow. 390, clearly maintain this doctrine.    In this last case, stores were furnished at the instance of the ship's husband, on a credit, who, with others, were the owners.    The stores by the original entry were charged to all the owners; a few days after the sale, bills were rendered, in which the ship's husband was only charged, and after two months a note of the husband's was taken at an extended credit of eight months, a receipt being given for the note as in full for the stores.    This note not being paid, the ship's husband becoming insolvent, it was held that the other owners were not thereby discharged, but were liable for the original consideration, and that it made no difference whether those who supplied the stores, knew that there were other owners or not.

We can see no distinction between stores, necessaries, &c., furnished a vessel, and the materials supplied by the plaintiffs.    For whatever may be the general law as to ownership of chattels in the progress of construction, the builders of the boat, under the circumstances of this case, had no claim to any property in her, consequently she must have belonged entirely to the defendants, as each plank and material was added in building, it became their property.    Long on Sales, 288.    Suppose a vessel should need repairs in sundry particulars, and the owners should agree, among themselves, that each one at his own cost should make a particular repair, and materials should be furnished one part owner to make the repairs he had undertaken to do, would such an agreement prevent the person furnishing the materials for the repairs from resorting to all the joint owners for the price of the materials furnished?    There is no doubt that by a special contract the liability for repairs may be restricted to a particular owner, but it devolves on the owners to show this, for as by law they are all liable they must show the facts which would exonerate any one of them.    There is nothing in the evidence establishing the fact that it was agreed that Osborne, one of the defendants, should build a particular part of the boat, and if there was, we can find no principle of law which, even in the event of such contract,

would restrict an individual furnishing one part owner's materials for building his part, to a recourse against that part owner alone, unless it was so agreed between the part owner and him who furnished the materials, or it could be showed that the credit was given exclusively to that part owner to whom the materials were supplied, and not to any of the others.

These considerations show that the Court did not err in refusing the last instruction asked by the defendants, for there was nothing in the evidence which showed that the plaintiffs intended only to give credit to Osborne, and even if the contract among the part owners, supposed by the instruction, did exist, there is no evidence that it was in any wise known to the plaintiffs.

It is obvious, from what has been previously said, that there was no error in refusing the first instruction asked by the defendants, and the third instruction may be considered in connexion with the first, and is objectionable in requiring the Court to tell the jury that Osborne should have been authorized by the other part owners before he could bind them for the materials obtained by him.

No injury was sustained by the defendants in refusing their second instruction, which related to the execution of the note by Osborne. It may have contained a correct legal proposition, about which no opinion is given, but inasmuch as it appeared from the evidence of the plaintiffs that there was but one cause of action, and that the consideration of the note described in the first count of the declaration, was the price of the materials set out in the bill of particulars, and as the verdict was for the price only of those materials with interest, we cannot for this cause reverse the judgment, for although an instruction may be in conformity to law, yet if this Court can see that its rejection has produced no injury to the party asking it, a judgment will not therefore be reversed.

The other Judges concurring, the judgment will be affirmed.